No. 845.

## ARMSTRONG v. WHITE.

PLEADING.—*Sufficiency of Complaint.*—*False Representations.*—*Fraud.* —*Real Estate.*—*Barter.*—In an action for damages for false representations, the complaint alleged, in substance, that the plaintiff bartered a stock of drugs for the same; that the owner of the land, to induce plaintiff to make the barter, represented the land to be well located, well adapted to farming purposes, that the soil was good and very fertile, that fifty acres thereof were in a high state of cultivation, except a small amount of meadow land, that it was well and securely fenced, contained valuable timber, was well improved, and was of the value of $30 per acre; that plaintiff was a practicing physician at the time the representations were made, and could not, on account of his practice, examine said real estate, and did not have any person to act for him to examine the premises, and that he was compelled to, and did, rely wholly upon the statements of the defendant, as to the kind, character, condition, value and location of the land; that all of such representations were false and made for the purpose of deceiving and defrauding plaintiff (specifically negativing the above representations), and that on account of such fraud, plaintiff has been damaged, etc.

*Held*, that the complaint states a cause of action.

Dissenting opinion by REINHARD, J.

From the Sullivan Circuit Court.

*J. S. Bays,* for appellant.

*W. S. Maple,* for appellee.

DAVIS, C. J.—This case comes here on the ruling of the circuit court in sustaining a demurrer to appellant's complaint.

It is alleged that appellant resided in the city of Terre Haute, where he owned a stock of drugs of the value of two thousand dollars, and that appellee owned, in the county of Sullivan, forty miles distant, the land described in the complaint, sixty-two acres, of the value of two hundred dollars; that said appellee, for the purpose of defrauding appellant, fraudulently and falsely represented to appellant that said land was well located, and

well adapted to farming purposes, was good and productive soil, and very fertile; that fifty acres thereof were in a high state of cultivation, and were then in cultivation in corn, except a small amount in meadow, and all said tract was fine land, well and securely fenced and well timbered with valuable timber, and was good tillable soil, and well improved, and that said land was worth thirty dollars per acre; that, in truth and in fact, said land was not well located and well adapted to farming purposes; that the soil thereof was not good, productive and fertile; that there was not fifty acres in a high state of cultivation, and said land was not fine land nor well and securely fenced, and had no timber of any value thereon, and was not good, tillable soil; that said land was sandy and unproductive, without fence, and was entirely worthless as farming lands, and was wholly unfit for cultivation, or for any other purpose, and could not be sold for five dollars per acre; that appellant was a practicing physician, and engaged in the practice of medicine at Terre Haute, at the time said fraudulent representations were made, and that it was impossible for him to leave said city on account of sick patients, who were then demanding his immediate attention, and that he could not leave them; and that he did not have any person to act for him in said premises, either to care for the sick patients or to examine said real estate, and that he was compelled to, and did, rely wholly upon the statements of appellee as to the kind, character, condition, and location of said land, the quality and production of the soil, and the value thereof, etc.; that, in reliance thereon, he traded to appellee his said stock of drugs, and took in exchange therefor said tract of land, and that on account of said fraud he has been damaged, etc.

The facts on which the action is predicated are well

and strongly stated. There is no technical defect in the pleading. The only question is, whether such fraudulent representations, and the damages sustained as the result thereof, can be made the basis for a cause of action.

In our opinion, the representations that said land was in a high state of cultivation, and was then in cultivation in corn and meadow, and that all of said tract was well and securely fenced, and well timbered with valuable timber, were as to alleged existing facts. *Busterud* v. *Farrington* (Minn.), 31 N. W. Rep. 360; *Jackson* v. *Armstrong*, 50 Mich. 65.

The appellant had the right to rely thereon, under the circumstances disclosed. The truth of all such representations is negatived in the complaint in clear and explicit terms. The demurrer concedes that the representations were made, as alleged; that they were false and made for the purpose of cheating and defrauding appellant; and that by reason thereof the appellant was damaged in a sum in excess of fifteen hundred dollars.

It is alleged in the complaint that all the facts were well known to appellee, and that he knew the representations so made by him were untrue.

We quote, in this connection, from *Jones* v. *Hathaway*, 77 Ind. 14: "There can be no doubt, we think, that the alleged fraud of the appellants, in the letting of the lands and in the procurement of the note in suit, is well pleaded both in the answer and in the counterclaims. The false and fraudulent representations of the appellants, stated by appellees in their answer and counterclaims, were as to alleged existing facts, namely, that the demised lands were not subject to overflow, and never had been overflowed. The representations were as to matters of fact, on which the appellees had the right to rely; and their truth was negatived in clear and explicit terms. Certainly, the appellees were under no obligations to go

upon the demised lands and examine or inquire into the truth or falsity of the appellants' representations. *Taylor* v. *Fletcher*, 15 Ind. 80.

"Upon this point, in *Mead* v. *Bunn*, 32 N. Y. 275, the court said that it is a 'mistaken assumption that a false representation by one of the parties to a contract puts the other on inquiry as to its truth. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown to him, as the basis of a mutual engagement; and he is under, no obligation to investigate and verify statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith.' "

It is not necessary to go to the full extent of the rule quoted in this case.

The doctrine enunciated in this case has not been over-ruled or modified, but has been cited with approval. *Ledbetter* v. *Davis*, 121 Ind. 119.

The complaint, in our opinion, is sufficient to withstand the demurrer.

Judgment reversed, with instructions to overrule the demurrer to the complaint.

Filed April 5, 1894.

## DISSENTING OPINION.

REINHARD, J.—The demurrer admits the truth of such facts only as are well pleaded. If the facts pleaded do not make a case on which a liability can be predicated, the mere fact that fraud and falsehood and other denunciatory phrases are employed by the pleader, does not make the admission of greater value.

In the present case, it appears to me that the alleged false representations are in the nature of opinions rather than of existing facts. They affect the character, condi-

tion and value of the land, and the adaptability of the soil to productiveness, etc. Such representations, though they prove to be false, are not the proper basis of an action. Besides, the truth or falsity of the representations was open to inquiry, and I do not think it is shown in the complaint that the appellant had not a reasonable opportunity to examine the property. The mere fact that he was a physician, and had patients at home who required his presence, did not prevent him from examining the land. Such an excuse would apply to any other person who is engaged in important business.

In *Cagney* v. *Cuson*, 77 Ind. 494, it was charged that the defendant and others conspired to mislead, deceive and defraud the plaintiff, by preventing him from having an inspection of the lands and personal property for which he was about to trade, and that said parties used certain artifices and tricks to keep him from making an investigation, and it was also alleged that the property was greatly inferior, both in quality and value, to what it was represented.

Judge NIBLACK, who delivered the opinion of the court, laid down the following propositions of law as deducible from the authorities:

"1. That the purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities.

"2. That inadequacy of consideration alone is no ground for inferring fraud, unless the inadequacy is so great as to impress every person with its grossness.

"3. That a purchaser has usually no right to rely upon affirmations of value made by the vendor, value being generally a mere matter of opinion, about which persons are liable to differ very widely."

The court held in that case, that nothing was averred in the complaint that necessarily prevented the plaintiff from making the examination if he had persisted in doing so, and that the *gravamen* of the complaint was made to rest upon the alleged misrepresentations as to the value of the property exchanged by defendant with the plaintiff. The complaint was held insufficient.

In *Gordon* v. *Parmelee*, 2 Allen (Mass.), 212, it was said: "Assertions concerning the value of property which is the subject of a contract of sale, *or in regard to its qualities and characteristics*" [the italics are my own], "are the usual and ordinary means adopted by sellers to obtain a high price, and are always understood as affording to buyers no ground for omitting to make inquiries for the purpose of ascertaining the real condition of the property. Affirmations concerning the value of land, or its adaptation to a particular mode of culture, or *the capacity of the soil to produce crops or support cattle*, are, after all, only expressions of opinion, or estimates founded on judgment, about which honest men might well differ materially. Although they might turn out to be erroneous or false, they furnish no evidence of any fraudulent intent. They relate to matters not peculiarly within the knowledge of the vendor, and do not involve any inquiry into facts which third persons might be unwilling to disclose. They are, strictly speaking, *gratis dicta*. The vendee can not safely place any confidence in them; and, if he does, he can not make use of his own want of vigilance and care in omitting to ascertain whether they were true or false as the basis of his claim for damages in reduction for the amount he agreed to pay for the property."

In *Williams* v. *McFadden* (Fla.), 1 So. Rep. 618, it was said by the court: "A statement made by the vendor

which is tantamount to an estimate of opinion, such as value, condition, character, adaptability to certain uses, \* \* \* is not actionable unless the seller resorts to some fraudulent means to prevent the purchaser from examining the property."

The truth or falsity of every alleged representation could have been ascertained upon inspection and inquiry, and if the purchaser blindly relied upon every statement by which the seller puffed his own property, and was worsted thereby, he has no one to blame but himself. While in good morals, a man is doubtless blameworthy under such circumstances, yet the law does not always conform to the rule of morals, and, as Bishop says, allows a great deal of "lying in trade" in puffing one's own property and depreciating that of another. Bishop Cont., section 664.

While it is, doubtless, true that there is a conflict in the cases as to what constitutes fraud, and many of them contain loose and inconsiderate statements as to what representations are facts and what are opinions, I regard the law to be as heretofore indicated, and I find nothing in our decisions that leads me to believe a different rule prevails in Indiana from the general doctrine already stated, that representations as to quality and value are usually regarded as mere opinions, and do not support an action for deceit, if the purchaser has a reasonable opportunity to examine. See *Foley* v. *Cowgill,* 5 Blackf. 18.

I am, therefore, of the opinion that the court did not err in sustaining the demurrer to the complaint.

Filed April 5, 1894.